H3hWharP

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4             v.                            15 Cr. 386 (JGK)

 5
     CORY HARRIS,
 6   a/k/a "Hop,"
     a/k/a "P,"
 7
                                             Plea
 8             Defendant.

 9   ------------------------------x

10                                           New York, N.Y.
                                             March 17, 2017
11                                           12:00 p.m.

12
     Before:
13
                          HON. JOHN G. KOELTL,
14
                                             District Judge
15

16                         APPEARANCES

17   JOON H. KIM
          Acting United States Attorney for
18        the Southern District of New York
     ANDREW C. ADAMS
19   MARGARET S. GRAHAM
     HADASSA R. WAXMAN
20        Assistant United States Attorneys

21   BOBBI C. STERNHEIM
     GRAINNE O'NEILL
22        Attorneys for Defendant

23
     Also Present:  Anthony Melchiorri, Special Agent, ATF
24

25
```

H3hWharP

1          (Case called)

2          THE COURT:  Good afternoon, all.  I have a plea

3    agreement before me.  I've marked it as Court Exhibit 1.  It's

4    a March 10, 2017, letter to Ms. Sternheim from the government,

5    signed by two government people, and it appears to be signed by

6    Mr. Harris and Ms. Sternheim today, March 17, 2017.

7          There are some preliminary issues.  The first is there

8    was a series of emails to my deputy, Mr. Fletcher, from

9    Ms. Sternheim, copied to the government.  One email was at 1:49

10   p.m., which says:

11         "Mr. Harris does not want to accept the plea offer and

12   does not want either myself or Ms. O'Neill to represent him at

13   trial.  Our apologies for this late notice.  Bobbi," and

14   Ms. Sternheim's signature block;

15         Another email from Ms. Sternheim at 10:34 this

16   morning, which says:

17         "Ms. O'Neill and I have met with Mr. Harris and he

18   wishes to accept the plea offer and proceed with change of plea

19   at noon.  Thank you.  Bobbi," Ms. Sternheim's signature block,

20   and again copied to the government attorneys.

21         My deputy forwarded those to me, so I would cover in

22   any event in the course of the plea allocution the fact that

23   Mr. Harris desires to enter a guilty plea pursuant to the plea

24   agreement, and that he is satisfied with his counsel.  Before I

25   begin any plea allocution, I want to ask whether any

H3hWharP

1      differences between Mr. Harris and his lawyers have been

2      resolved and whether Mr. Harris is satisfied with his counsel

3      and has had sufficient opportunity to discuss the potential

4      plea with his counsel and whether he wishes to plead guilty

5      knowingly and voluntarily before I go through the more detailed

6      plea allocution.

7              Ms. Sternheim.

8              MS. STERNHEIM:  Your Honor, it is my understanding, as

9      stated in my last email, having met with Mr. Harris this

10     morning, with Ms. O'Neill, that he wishes to proceed with the

11     plea offer summarized in his plea agreement, and that he wishes

12     us to continue as his attorneys.  I think it's better left for

13     the Court to ask Mr. Harris directly with regard to the issue

14     of whether issues have been resolved, because the issues did

15     not emanate from my end, so I think it's best for the Court to

16     inquire whether he is satisfied with us continuing to represent

17     him.

18             THE COURT:  OK.  Mr. Harris.

19             MS. STERNHEIM:  May he sit, or would you like him to

20     stand?

21             THE COURT:  Whatever is convenient.

22             MS. STERNHEIM:  Sitting is more convenient.

23             THE DEFENDANT:  Yes, all issues are resolved, your

24     Honor, and I'd like to proceed.

25             THE COURT:  Are you satisfied with Ms. Sternheim and

H3hWharP

1  Ms. O'Neill's representation of you?

2          THE DEFENDANT:  Yes, I am.

3          THE COURT:  Have you met with them and talked with

4  them about your case?

5          THE DEFENDANT:  Yes, I met with them.  We spoke.

6          THE COURT:  Have they discussed with you the

7  advantages and disadvantages of entering a plea of guilty?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Are you satisfied that you have resolved

10  any issues that you had with them with respect to their

11  representation of you?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Now, I don't want to inquire into any

14  attorney-client privilege issues between you and your lawyers,

15  but I just want to make sure that whatever issues you had with

16  them that led you to tell Ms. Sternheim that you wanted a new

17  lawyer have been resolved and that you're satisfied and that

18  you want to continue with them in their representation of you.

19  Do you understand what I'm asking?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Have you resolved those issues, and are

22  you satisfied to have them continue to represent you?

23          THE DEFENDANT:  Yes.

24          THE COURT:  OK.  Ms. Sternheim, are you satisfied that

25  you can continue to represent Mr. Harris?

H3hWharP

1          MS. STERNHEIM:  Absolutely, Judge.

2          THE COURT:  OK.  Are you satisfied from your end that

3    whatever issues arose between you and Mr. Harris have been

4    satisfied and that you're able to freely communicate with him

5    and have a productive attorney-client relationship with him?

6          MS. STERNHEIM:  Definitely.

7          THE COURT:  OK.  Does the government think I should

8    ask any other questions on this issue?

9          MR. ADAMS:  No, your Honor.  Thank you.

10         THE COURT:  Then the next issue is the plea agreement.

11   As I'll discuss, the Court is not bound by the plea agreement,

12   but the Court reads the plea agreement, of course.

13         Now, the Court was provided with a plea agreement,

14   dated March 10, 2017, not signed by the parties, and then this

15   morning I have what is marked as the original March 10, 2017,

16   plea agreement, which is marked as Court Exhibit 1 and is

17   stamped "original" and is signed by the parties.  As I say, the

18   Court is not bound by the plea agreement, but the Court reads

19   the plea agreement.

20         Could the government tell me what the changes are

21   between the copy dated March 10 and the original now that's

22   signed, dated March 10.

23         MR. ADAMS:  Your Honor, the signed copy that is marked

24   "original," as discussed with defense counsel earlier, made one

25   change to the version that I think was circulated previously --

H3hWharP

1    two changes, actually.

2           The first is on the first page.  Previously the

3    original version, as circulated, had stated that there was a

4    mandatory term of supervised release.  That has been removed.

5    Under 848(e), we believe that there's a five-year maximum,

6    there's no mandatory minimum, and so that change is reflected

7    in the signed original agreement.

8           THE COURT:  The supervised release is simply a maximum

9    term of five years.

10          MR. ADAMS:  That's correct, your Honor.  The signed

11   version should reflect that.

12          There was a typo on the second page.  The guidelines

13   level is 41.  I think at the very bottom of the second page, in

14   a prior version, it said "at guidelines level 40," the

15   applicable fine range is what it is.

16          THE COURT:  Right.

17          MS. STERNHEIM:  That's been changed to say 41.

18          THE COURT:  OK.

19          MR. ADAMS:  Other than that, no other changes.

20          THE COURT:  All right.  Then I have some additional

21   questions.  Where do you get the maximum fine of $2 million?

22          MR. ADAMS:  In 848 itself, your Honor.  It's in

23   848(a).

24          THE COURT:  Is it clear that that's right?  (e)(1)(A)

25   says, "any person engaged in or working in furtherance of a

H3hWharP

1    continuing criminal enterprise, or any person engaging in an

2    offense punishable under Section 841(b)(1)(A) of this title, or

3    Section 960(b)(1) of this title, who intentionally kills,

4    counsels, commands, induces, procures, or causes the

5    intentional killing of an individual, and such killing results,

6    shall be sentenced to any term of imprisonment that shall not

7    be less than 20 years and may be up to life imprisonment, and

8    may be subject to death."

9              (e)(1)(A) seems to draw a distinction between a person

10   engaged in or working in furtherance of a continuing criminal

11   enterprise and a person engaging in an offense punishable under

12   Section 841(b)(1)(A), which is what's charged here.  848(a) has

13   a $2 million fine for a person engaged in a continuing criminal

14   enterprise.

15             I would suggest that it is probably academic and that

16   the better course of valor would be to replace $2 million with

17   $250,000, or twice the gross pecuniary gain derived from the

18   offense or twice the gross pecuniary loss.  Before you write

19   anything, the next issue, then, is that same paragraph

20   describes, in violation of Title 18, United States Code,

21   Sections 848(e) and 2.  That's plainly wrong.

22             MR. ADAMS:  That's incorrect.

23             THE COURT:  It's Title 21, United States Code, Section

24   848(e) and 18 U.S.C. Section 2.

25             MR. ADAMS:  Yes.

H3hWharP

1        THE COURT:  Let me pass the original of the plea

2   agreement down.  And if it's right that $2 million shouldn't be

3   included, then on page 2, the final sentence should be the fine

4   range is 50,000 to a maximum of 500,000, which is the guideline

5   for level 41.

6        MR. ADAMS:  Thank you, your Honor.  We agree that the

7   fine range is academic, and I take your point on the way that

8   this is charged with respect to 848(e), so we'll make that

9   change.

10        On the fine what I would propose writing is 250,000 or

11   twice the gross pecuniary gain.  That way the fine range under

12   the guidelines isn't capped, so it still goes up to $500,000.

13        THE COURT:  It's capped at 500,000.

14        MR. ADAMS:  Correct.

15        THE COURT:  The guideline is 50,000 to 500,000.

16        MR. ADAMS:  That's correct, your Honor, and then on

17   the statutory side it would be 250,000 or twice.

18        THE COURT:  Twice, that's right.

19        MR. ADAMS:  And one other conforming edit on page 4

20   with respect to the fine.

21        THE COURT:  All right.  Mr. Fletcher, please

22   administer the oath to the defendant.

23        (Defendant sworn)

24        THE DEPUTY CLERK:  Please state your full name slowly

25   for the record.

H3hWharP

1              THE DEFENDANT:  Cory Harris.

2              THE COURT:  You can remain seated.  Keep your voice up

3    and use the microphone.

4              Mr. Harris, do you understand you are now under oath,

5    and that if you answer any of my questions falsely, your false

6    or untrue answers may later be used against you in another

7    prosecution for perjury or making a false statement?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Tell me your full name, please.

10             THE DEFENDANT:  Cory Harris.

11             THE COURT:  How old are you?

12             THE DEFENDANT:  33 years old.

13             THE COURT:  How far did you go in school?

14             THE DEFENDANT:  I have a GED.

15             THE COURT:  I'm sorry?

16             THE DEFENDANT:  I have a GED.

17             THE COURT:  GED?  Are you a citizen of the United

18   States?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Are you able to speak and understand

21   English?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Are you now or have you recently been

24   under the care of a doctor or a psychiatrist?

25             THE DEFENDANT:  No.

H3hWharP

1          THE COURT:  Have you ever been treated or hospitalized

2     for any mental illness or any type of addiction, including drug

3     or alcohol addiction?

4          THE DEFENDANT:  No.

5          THE COURT:  In the past 24 hours, have you taken any

6     drugs, medicines, or pills, or have you drunk any alcohol?

7          THE DEFENDANT:  No.

8          THE COURT:  Is your mind clear today?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Are you feeling all right today?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do either counsel have any doubt as to the

13     defendant's competence to plead at this time?

14          MR. ADAMS:  No, your Honor.

15          MS. STERNHEIM:  No.

16          THE COURT:  Now, Mr. Harris, Ms. Sternheim, your

17     lawyer, has informed me that you wish to enter a plea of guilty

18     to Count Five of the superseding indictment.  Is that what you

19     wish to do?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Have you had a full opportunity to discuss

22     your case with Ms. Sternheim and to discuss the consequences of

23     entering a plea of guilty?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Are you satisfied with Ms. Sternheim and

H3hWharP

```
1    her representation of you?

2             THE DEFENDANT:  Yes.

3             THE COURT:  On the basis of Mr. Harris' responses to

4    my questions and my observations of his demeanor, I find that

5    he is fully competent to enter an informed plea at this time.

6             Now, Mr. Harris, before I accept any plea from you,

7    I'm going to be asking you certain questions.  My questions are

8    intended to satisfy me that you wish to plead guilty because

9    you are, in fact, guilty and that you fully understand the

10   consequences of your plea, and furthermore, that you are

11   pleading guilty knowingly and voluntarily, and that there is an

12   independent basis in fact for your plea.  Do you understand

13   that?

14            THE DEFENDANT:  Yes.

15            THE COURT:  I'm now going to describe to you certain

16   rights that you have under the Constitution and laws of the

17   United States, which rights you will be giving up if you enter

18   a plea of guilty.  Please listen to me very carefully.  If

19   there is anything that I say that you don't understand -- if

20   there's anything I say that you don't understand -- please ask

21   me to stop, and either I or Ms. Sternheim will explain it to

22   you more fully.  All right?

23            THE DEFENDANT:  Yes.

24            THE COURT:  Mr. Harris, under the Constitution and

25   laws of the United States, you have a right to a speedy and
```

H3hWharP

1    public trial by a jury on the charges against you which are

2    contained in the superseding information.  Do you understand

3    that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  If there were a trial, you would be

6    presumed to be innocent and the government would be required to

7    prove you guilty by competent evidence and beyond a reasonable

8    doubt.  You would not have to prove that you were innocent at

9    trial.  Do you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  If there were a trial, a jury composed of

12   12 people selected from this district would have to agree

13   unanimously that you were guilty.  Do you understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  If there were a trial, you would have a

16   right to be represented by a lawyer, and if you could not

17   afford a lawyer, a lawyer would be provided to you free of

18   cost.  Do you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  In fact, Mr. Harris, you have a right to

21   be represented by a lawyer at trial and at every other stage of

22   the proceedings against you, and if you could not afford a

23   lawyer, a lawyer would be provided to you free of cost.  Do you

24   understand that?

25             THE DEFENDANT:  Yes.

H3hWharP

1            THE COURT:  If there were a trial, you would have the

2     right to see and hear all of the witnesses against you and your

3     attorney could cross-examine them.  You would have a right to

4     have your attorney object to the government's evidence and

5     offer evidence on your behalf, if you so desired, and you would

6     have the right to have subpoenas issued or other compulsory

7     process used to compel witnesses to testify in your defense,

8     and you would not be required to testify.  Do you understand

9     all of that?

10            THE DEFENDANT:  Yes.

11            THE COURT:  If there were a trial, you would have the

12     right to testify if you wanted to, but no one could force you

13     to testify if you didn't want to, and furthermore, no inference

14     or suggestion of guilt could be drawn if you chose not to

15     testify at trial.  Do you understand that?

16            THE DEFENDANT:  Yes.

17            THE COURT:  Mr. Harris, do you understand each and

18     every one of the rights that I've described to you?

19            THE DEFENDANT:  Yes.

20            THE COURT:  Do you have any questions about any of

21     those rights?

22            THE DEFENDANT:  No questions.

23            THE COURT:  Do you understand that by entering a plea

24     of guilty today you are giving up each and every one of those

25     rights; that you are waiving those rights; and that you will

H3hWharP

1    have no trial?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you understand that you can change your

4    mind right now and refuse to enter this plea of guilty?  You

5    don't have to enter this plea if you don't want to for any

6    reason at all.  Do you understand that completely?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Now, Mr. Harris, you've received a copy of

9    the superseding information against you, is that correct?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Have you read it?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Did you discuss it with your lawyer?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you understand what you are charged

16   with in the superseding information?

17             THE DEFENDANT:  Yeah.

18             MS. STERNHEIM:  Your Honor, it was an indictment, just

19   for clarity.

20             THE COURT:  I'm sorry.  Superseding indictment.  Thank

21   you.

22             Mr. Harris, when I've referred to the superseding

23   information, I meant the superseding indictment.  Do you

24   understand that?

25             THE DEFENDANT:  Yes.

H3hWharP

1           THE COURT:  So every time I said superseding

2   information, you should take that to mean superseding

3   indictment.  Do you understand?

4           THE DEFENDANT:  Yes.

5           THE COURT:  OK.  So you've received a copy of the

6   superseding indictment, is that correct?

7           THE DEFENDANT:  Yes.

8           THE COURT:  And have you read it?

9           THE DEFENDANT:  Yes, I read it.

10          THE COURT:  And did you discuss it with your lawyer?

11          THE DEFENDANT:  Yeah.

12          THE COURT:  Do you understand what you are charged

13  with in the superseding indictment?

14          THE DEFENDANT:  Yes.

15          THE COURT:  I understand that you wish to enter a plea

16  of guilty to Count Five of the superseding indictment, so let

17  me go over that count with you to assure myself that you

18  understand what the government would be required to prove

19  beyond a reasonable doubt at trial before you could be

20  convicted of the crime charged in Count Five.

21          Count Five of the superseding indictment reads:

22          "The grand jury further charges, on or about December

23  28, 2014, in the Southern District of New York, while engaged

24  in an offense punishable under Section 841(b)(1)(A) of Title

25  21, United States Code, namely a conspiracy to distribute, and

H3hWharP

1   to possess with the intent to distribute, 280 grams and more of

2   mixtures and substances containing a detectable amount of

3   cocaine base, in a form commonly known as crack, Cory Harris,

4   also known as "Hop," also known as "P," the defendant,

5   intentionally and knowingly killed and counseled, commanded,

6   induced, procured, and caused the intentional killing of

7   Rashaun Nicholson and did aid and abet the intentional killing

8   of Nicholson in the vicinity of 78 Catherine Street, New York,

9   New York, in violation of Title 21, United States Code, Section

10  848(b)(1)(A) and Title 18, United States Code, Section 2."

11          Do you understand that's what you are charged with in

12  Count Five of the superseding indictment?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand that if you did not

15  plead guilty, the government would be required to prove beyond

16  a reasonable doubt at trial each of the following elements of

17  the offense:

18          First, that you, the defendant, were engaged in a

19  conspiracy to distribute or to possess with the intent to

20  distribute a controlled substance, specifically, 280 grams or

21  more of mixtures and substances containing a detectable amount

22  of cocaine base in a form commonly known as crack;

23          Second, that you, the defendant, intentionally killed

24  or counseled or commanded or induced or procured or caused the

25  intentional killing of Rashaun Nicholson;

H3hWharP

1          Third, that the killing of Rashaun Nicholson actually

2     resulted from the defendant's -- that is your -- actions;

3          And fourth, that such killing occurred because of and

4     as part of the defendant's -- that's your -- working in

5     furtherance of the conspiracy to distribute controlled

6     substances described in the first element of the offense.

7          Do you understand the government would be required to

8     prove all of that beyond a reasonable doubt at trial?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Count Five also alleges aiding and

11    abetting, which means that if the government failed to prove

12    that you personally committed the crime charged in Count Five,

13    you could be convicted of the crime charged in Count Five if

14    the government proved beyond a reasonable doubt that another

15    person committed all of the elements of the crime charged in

16    Count Five and that you aided and abetted that person in the

17    commission of the crime.

18         In order to aid or abet another to commit a crime,

19    it's necessary that the defendant -- that's you -- willfully

20    and knowingly associated yourself in some way with the crime

21    and that you willfully and knowingly sought by some act to help

22    make the crime succeed.  The jury should be asked, "Did the

23    defendant -- that's you -- participate in the crime charged as

24    something you wished to bring about?  Did you associate

25    yourself with the crime charged knowingly and willfully?  Did

H3hWharP

1    you seek by your actions to make the crime charged succeed?

2            If the government has proved beyond a reasonable doubt

3    that you, the defendant, did all of those things, you, the

4    defendant, are an aider and abetted and therefore guilty of the

5    crime charged in Count Five.  I've explained to you the

6    elements that the government would have to prove beyond a

7    reasonable doubt before you could be convicted of the crime

8    charged in Count Five, or what the government would have to

9    prove to prove you guilty of aiding and abetting another person

10   in the commission of the crime charged in Count Five.  Do you

11   understand that?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Now let me go over the penalty for the

14   crime charged in Count Five.

15            Count Five carries a maximum term of lifetime

16   imprisonment and a mandatory minimum term of 20 years'

17   imprisonment -- in other words, the minimum sentence of

18   imprisonment that the Court can impose is 20 years, and the

19   maximum term of imprisonment is life; a maximum term of

20   supervised release of five years; a maximum fine of $250,000,

21   or twice the gross pecuniary gain derived from the offense or

22   twice the gross pecuniary loss to a person other than yourself

23   as a result of the offense, and a $100 mandatory special

24   assessment.

25            Do you understand that's the maximum penalty for the

H3hWharP

1   crime charged in Count Five as well as the mandatory minimum

2   penalty for the crime charged in Count Five?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Do you also understand that when I talk

5   about supervised release, supervised release means that you

6   will be subject to monitoring when you are released from

7   prison, and the monitoring is to be under terms and conditions

8   which could lead to reimprisonment without a jury trial if you

9   violate them?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Do you understand that if you violated the

12  terms of supervised release and were sentenced to prison, you

13  could be sentenced to prison for the entire term of supervised

14  release without any credit for any time you had already spent

15  on supervised release?

16           Do you understand that?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Do you also understand that as part of

19  your sentence, I can also order restitution to any person

20  injured as a result of your criminal conduct?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Do you understand?

23           There is no forfeiture allegation, correct?

24           MR. ADAMS:  Correct, your Honor.

25           THE COURT:  OK.  Mr. Harris, do you also understand

H3hWharP

1    that if I accept your guilty plea and adjudge you guilty, that

2    adjudication may deprive you of valuable civil rights, such as

3    the right to vote, the right to hold public office, the right

4    to serve on a jury, and the right to possess any kind of

5    firearm?

6                Do you understand that?

7                THE DEFENDANT:  Yes.

8                THE COURT:  Now, Mr. Harris, under current law, there

9    are sentencing guidelines that judges must consult in

10   determining your sentence.  You have spoken to your lawyers

11   about the sentencing guidelines, haven't you?

12               THE DEFENDANT:  Yes.

13               THE COURT:  Do you understand that I, as the

14   sentencing court, will not be able to determine your guideline

15   sentencing range until after the probation department has

16   completed a presentence report and after you and your lawyers

17   and the government have had an opportunity to review that

18   report, to challenge anything contained in the report, and to

19   bring those challenges to my attention?

20               Do you understand that?

21               THE DEFENDANT:  Yes.

22               THE COURT:  Do you also understand that even after

23   it's determined what the basic guideline sentencing range is in

24   your case, I have the authority in some circumstances to depart

25   upward or downward from the sentence that is otherwise called

H3hWharP

```
 1    for by the guidelines in determining what your guidelines

 2    sentencing range is?

 3             Do you understand that?

 4             THE DEFENDANT:  Yes.

 5             THE COURT:  And even after that range is determined,

 6    taking into account any upward or downward departures, I must

 7    then consider other statutory factors to arrive at a final

 8    conclusion as to what the appropriate and reasonable sentence

 9    is in your case.  Do you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Do you also understand that if you're

12    sentenced to prison, parole has been abolished and you will not

13    be released any earlier on parole?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you understand that if your lawyer or

16    anyone else has attempted to estimate or predict what your

17    sentence will be, their estimate or prediction could be wrong?

18             THE DEFENDANT:  Yes.

19             THE COURT:  No one, Mr. Harris -- not your lawyer, not

20    the government, no one -- can or should give you any assurance

21    of what your sentence will be, since that sentence can only be

22    determined after the probation department has completed the

23    presentence report, after I have ruled on any challenges to the

24    report, and after I have determined what the appropriate and

25    reasonable sentence is in your case.  Do you understand that?
```

H3hWharP

```
 1                THE DEFENDANT:  Yes.

 2                THE COURT:  And do you also understand that even if

 3      your sentence is different from what your lawyer or anyone else

 4      told you that it might be, or if it's different from what you

 5      expect it to be, you will still be bound by your guilty plea

 6      and you will not be allowed to withdraw your plea of guilty?

 7                Do you understand that?

 8                THE DEFENDANT:  Yes.

 9                THE COURT:  Now, Mr. Harris, I've been given the plea

10      agreement which you heard me talk about at the outset with the

11      government and your lawyer.  It's the March 10, 2017, letter

12      from the government to Ms. Sternheim.  It appears to be signed

13      by two people with the government and appears to be signed by

14      you and Ms. Sternheim today, March 17, 2017.  I've marked it as

15      Court Exhibit 1.

16                Have you signed this plea agreement?

17                THE DEFENDANT:  Yes.

18                THE COURT:  Did you read the agreement before you

19      signed it?

20                THE DEFENDANT:  Yes.

21                THE COURT:  Did you discuss it with your lawyer before

22      you signed it?

23                THE DEFENDANT:  Yes.

24                THE COURT:  Did you fully understand the agreement

25      before you signed it?
```

H3hWharP

1              THE DEFENDANT:  Yes.

2              THE COURT:  Does this letter agreement constitute your

3    complete and total understanding of the entire agreement

4    between the government, your lawyer, and you?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Has anything been left out?

7              THE DEFENDANT:  No.

8              THE COURT:  Has anyone offered you any inducements or

9    threatened you or forced you to plead guilty or to enter into

10   this plea agreement?

11             THE DEFENDANT:  No.

12             THE COURT:  There is a provision of the plea agreement

13   that provides that the defendant will not file a direct appeal

14   nor bring a collateral challenge, including, but not limited

15   to, an application under Title 28, United States Code, Section

16   2255 and/or Section 2241, nor seek a sentence modification,

17   pursuant to Title 18, United States Code, Section 3582(c), of

18   any sentence within or below the stipulated guidelines range of

19   360 months to life imprisonment.  Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Do you understand that if I sentence you

22   to life imprisonment or less, you have given up your right to

23   appeal or challenge in any proceeding, including any habeas

24   corpus proceeding, any such sentence?

25             THE DEFENDANT:  Yes.

H3hWharP

1        THE COURT:  Do you also understand that the Court --

2    that's me -- is not bound by this plea agreement or by any of

3    the provisions in the plea agreement?

4        The Court must make an independent determination of

5    the appropriate sentence in your case, and even if that

6    sentence differs from anything that's contained in the plea

7    agreement, you will still be bound by your guilty plea and you

8    will not be allowed to withdraw your plea of guilty.  Do you

9    understand that?

10        THE DEFENDANT:  Yes.

11        THE COURT:  Ms. Sternheim, do you know of any valid

12    defense that would prevail at the trial of Mr. Harris?

13        MS. STERNHEIM:  No.

14        THE COURT:  Do you know of any reason why Mr. Harris

15    should not be permitted to plead guilty?

16        MS. STERNHEIM:  No.

17        THE COURT:  Mr. Harris, please tell me what you did in

18    connection with the crime to which you are entering a plea of

19    guilty, Count Five of the superseding indictment.

20        THE DEFENDANT:  Beginning 2012 to --

21        THE COURT:  Please go a little slower, Mr. Harris.

22        THE DEFENDANT:  During 2012 to 2015, I agreed with

23    others to distribute drugs, including marijuana, heroin, and

24    crack cocaine.  During the course of the conspiracy, at least

25    280 grams of crack were sold in Manhattan and Vermont.  In

H3hWharP

1    connection with this drug-trafficking offense, I possessed a

2    gun in Manhattan, and at my direction, a member of this group

3    shot Rashaun Nicholson in Manhattan, causing his death.  I knew

4    what I did was wrong and against the law.

5            THE COURT:  All right.  You said that at your

6    direction people shot Rashaun Nicholson in Manhattan.  Is that

7    correct?

8            THE DEFENDANT:  Yes.

9            THE COURT:  And as a result of that, was Rashaun

10   Nicholson killed?

11           THE DEFENDANT:  Yes.

12           THE COURT:  And was that killing because of and as

13   part of your engaging in the conspiracy to distribute drugs,

14   including 280 grams or more of crack?

15           THE DEFENDANT:  Yes.

16           THE COURT:  And you said that the agreement to

17   distribute crack included acts in the Bronx, is that right?

18   Did I hear you --

19           THE DEFENDANT:  Manhattan.

20           THE COURT:  In Manhattan, OK.  And the killing of

21   Mr. Nicholson was in Manhattan, is that right?

22           THE DEFENDANT:  Yes.

23           THE COURT:  When you did the acts that you described

24   to me -- oh, by the way, the killing of Mr. Nicholson occurred

25   in December 2014, is that right?

H3hWharP

1              THE DEFENDANT:  Yes.

2              THE COURT:  When you did the acts that you've

3      described to me, did you know that what you were doing was

4      wrong and illegal?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Does the government want me to ask any

7      other questions of the defendant?

8              MR. ADAMS:  No, your Honor.  Thank you.

9              THE COURT:  Tell me what the government's evidence

10     would be at trial.

11             MR. ADAMS:  Your Honor, the evidence would include

12     testimony from several cooperating witnesses, as set forth in

13     the government's papers previously, that would include

14     discussions about the manners and methods of selling crack

15     cocaine, marijuana, and heroin with Mr. Harris as a source of

16     supply of both crack and heroin as well as marijuana.  The same

17     witnesses would testify regarding the movement of those

18     narcotics between Manhattan and Vermont.  They would testify

19     regarding the death of Mr. Nicholson in connection with that

20     overall conspiracy.  Particularly, they would describe the

21     motivation for the killing as retribution for the theft of a

22     portion of narcotics and the theft of firearms used by

23     Mr. Harris in furtherance of that same narcotics conspiracy.

24             The evidence would also include geo-location data from

25     cellular telephones associated with the shooter in this case,

H3hWharP

1   Mr. Jenkins, who is also charged in the same case, as well as

2   at least two other people involved in the plot to murder

3   Mr. Nicholson.

4          It would involve text messages and data from cellular

5   telephones, including the telephones of Mr. Harris himself, as

6   well as the telephones of other members of the conspiracy.

7   Those text messages would corroborate much of the testimony

8   from the cooperating witnesses, including with respect to the

9   quantities of drugs involved, the manner of moving drugs and

10  selling drugs, the source of supply of these narcotics, and I

11  think most pertinent, the ruse to lure Mr. Nicholson to his

12  death.

13         THE COURT:  And would the government's evidence

14  establish the defendant's guilt beyond a reasonable doubt?

15         MR. ADAMS:  Absolutely.

16         THE COURT:  All right.

17         Mr. Harris, how do you plead to the charge against you

18  in Count Five of the superseding indictment; guilty or not

19  guilty?

20         THE DEFENDANT:  Guilty.

21         THE COURT:  Are you pleading guilty because you are,

22  in fact, guilty?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Are you pleading guilty voluntarily and of

25  your own free will?

H3hWharP

1                 THE DEFENDANT:  Yes.

2                 THE COURT:  Before I finally accept the defendant's

3       plea, Ms. Sternheim, do you want me to ask any other questions

4       of the defendant?

5                 MS. STERNHEIM:  No, your Honor.

6                 THE COURT:  Do you know of any reason that I should

7       not accept his plea?

8                 MS. STERNHEIM:  No, I do not.

9                 THE COURT:  Before I finally accept the defendant's

10      plea, does the government want me to ask any other questions of

11      the defendant?

12                MR. ADAMS:  No, your Honor.  Thank you.

13                THE COURT:  Does the government know of any reason

14      that I should not accept his plea?

15                MR. ADAMS:  No.

16                THE COURT:  Mr. Harris, because you acknowledge that

17      you are guilty as charged in Count Five of the superseding

18      indictment, because I find that you know your rights and are

19      waiving them knowingly and voluntarily, because I find that

20      your plea is entered knowingly and voluntarily and is supported

21      by an independent basis in fact containing each of the

22      essential elements of the offense, I accept your guilty plea

23      and I adjudge you guilty of the offense to which you have

24      pleaded.

25                Mr. Harris, the probation department will now prepare

H3hWharP

1    the presentence report to assist me in sentencing you.  You

2    will be interviewed by the probation department.  It's very

3    important that the information you provide to the probation

4    department be truthful and accurate.  The presentence report is

5    very important to me in my decision as to what your sentence

6    will be.  You and your lawyer will have the opportunity to

7    review the presentence report, to challenge anything contained

8    in the report, and then to speak on your behalf at sentencing.

9             Date fixed for sentence, Mr. Fletcher.

10            THE DEPUTY CLERK:  Friday, June 23, 2017, at 2:30 p.m.

11            THE COURT:  Is that satisfactory, June 23, 2017, at

12   2:30 p.m.?

13            MS. STERNHEIM:  That is fine for the defendant.

14            THE COURT:  Government.

15            MR. ADAMS:  Thank you, your Honor.  Yes.

16            THE COURT:  OK.  I'd ask for defense submissions 14

17   days before sentence, the government submission eight days

18   before sentence.

19            Anything further?

20            MR. ADAMS:  Nothing for the government, your Honor.

21            MS. STERNHEIM:  No.  Thank you.

22            THE COURT:  OK.  I'm returning Court Exhibit 1 to the

23   government.

24            Good afternoon, all.

25            (Adjourned)